UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CADE PARTNERS LLC,
Plaintiff,
v.
LEGACY BRAIN & SPINE, L.L.C.,
Defendant.

Case No. 26-cv-04987-JSC

**ORDER RE: DEFENDANT'S MOTION TO DISMISS**

Re: Dkt. Nos. 21, 26

Plaintiff sues Defendant for breach of contract and breach of the implied covenant of good faith and fair dealing. (Dkt. No. 1.)[1] Pending before the Court is Defendant's motion to dismiss for lack of personal jurisdiction, to dismiss under the first-to-file rule, or to transfer this case to the Northern District of Georgia. (Dkt. No. 21.) Defendant also moves to stay discovery deadlines pending the Court's ruling on its motion to dismiss or transfer. (Dkt. No. 26.) Having carefully considered the parties' submissions, and with the benefit of oral argument on August 20, 2026, the Court DENIES Defendant's motion to dismiss or transfer and motion to stay discovery. Plaintiff has met its burden to show the Court has specific personal jurisdiction over Defendant because Plaintiff's claim arises out of Defendant's agreement to repay Plaintiff, a California company, for the costs of completing a transaction in which Plaintiff would purchase and operate Defendant for several years. Because Defendant's first-filed suit was an anticipatory suit, the Court refuses to dismiss Plaintiff's complaint under the first-to-file rule. And the Court denies Defendant's motion to transfer because Defendant has not shown 28 U.S.C. § 1404(a)'s requirements are satisfied.

\\

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

## BACKGROUND

## I. COMPLAINT ALLEGATIONS

As a "healthcare services investment company based in San Francisco, California," Plaintiff "invests and acquires healthcare practices, [and] revamps and enhances the valuation of the practices often for resale and acquisition." (Dkt. No. 1 ¶ 10.) Defendant "is a brain and spine surgery clinic with approximately nine locations and two ambulatory surgery centers located in Georgia." (*Id.* ¶ 9.) From April 2025 to June 2025, the parties "were in discussions regarding" Plaintiff purchasing Defendant "to run its business and improve its functioning and valuation." (*Id.* ¶ 11.) Around June 24, 2025, the parties entered into a letter of intent ("LOI") for Plaintiff "to acquire one hundred percent of [Defendant's] equity . . . in exchange for cash consideration and rollover equity." (*Id.* ¶ 12.) Because the LOI "contemplated that [Plaintiff] would make significant outlays of capital to bring the transaction to fruition, including but not limited to legal costs, diligence, and obtaining necessary investors," it "specified that if [Plaintiff] was substantially positioned to close the transaction and [Defendant] refused to close for any reason other than [Plaintiff's] material breach, [Defendant] would pay all costs and expenses incurred and closing fees." (*Id.* ¶¶ 12-13.)

Over the following months, Plaintiff "engaged in due diligence and the parties exchanged data." (*Id.* ¶ 14.) Plaintiff also "worked on and secured necessary financing from different funds for the transaction," and Defendant's founder and CEO, Dr. Elshihabi, "agreed to have HCAP Partners ('HCAP') be one of the investors." (*Id.* ¶¶ 9, 15.) Around November 8, 2025, "Dr. Elshihabi confirmed his intention to proceed with the plan," and Defendant "confirmed its acceptance" of the latest documents and "stat[ed] that it was ready to proceed with closing documents." (*Id.* ¶¶ 16-17.) Plaintiff then sent closing documents to Defendant, who "responded with redline markups." (*Id.* ¶ 17.)

However, around November 24, 2025, Plaintiff discovered the Department of Justice had issued Dr. Elshihabi a Civil Investigative Demand related to a False Claims Act investigation. (*Id.* ¶ 18.) Plaintiff subsequently learned Defendant had formed agreements with Southern Regional Medical Center ("SRMC") "whereby SRMC paid monthly sums to [Defendant] to be available

onsite, provide outpatient and surgical services at SRMC facilities," and Defendant "referred patients to SRMC" and "made intracompany referrals for advanced imaging . . . without complying with Centers for Medicare & Medicaid Services (CMS) disclosure requirements." (*Id.* ¶ 19.) So, the parties added indemnification provisions to the closing documents. (*Id.* ¶ 20.)

Plaintiff's key personnel met with Dr. Elshihabi and other of Defendant' personnel in Atlanta, and "Dr. Elshihabi indicated his desire to close by year's end." (*Id.* ¶ 21.) Around January 5, 2026, the parties "agreed on final terms of closing including final purchase price and earnout." (*Id.* ¶ 23.) Plaintiff sent Dr. Elshihabi the contracts for physicians to sign, Defendant's counsel "confirmed that all the banks had provided the payoff amounts for closing," and Plaintiff sent the closing documents. (*Id.* ¶ 23-24.) Between January 19, 2026 and January 22, 2026, Plaintiff's personnel traveled to Atlanta for meetings with Defendant's staff, during which the parties agreed to "two minor changes [] on the asset purchase and transaction agreement relating to escrow to release and earnout language," but Defendant "did not dispute that the transaction documents were final and signature ready." (*Id.* ¶ 25.)

However, around January 25, 2026, Defendant communicated "it was going to take a step back and would not close on the transaction." (*Id.* ¶ 26.) Because Plaintiff "was substantially positioned to consummate the transaction," it requested Defendant "pay its costs and expenses and closing fees of in excess of $921,000." (*Id.* ¶ 27.) Defendant has not reimbursed Plaintiff. (*Id.*)

## II. PROCEDURAL HISTORY

Defendant's counsel declares she sent Plaintiff's counsel an email on May 20, 2026 "with a settlement offer and attaching a draft complaint that was captioned in the Northern District of California that [Plaintiff] was prepared to finalize and file if the parties were not able to reach a settlement over the next two weeks." (Dkt. No. 35-2 ¶ 3.) Defendant's counsel did not hear back until May 22, 2026, when Plaintiff's counsel informed her "he had filed an action in the Northern District of Georgia" on May 21, 2026. (*Id.* ¶ 4.)

On May 27, 2026, Plaintiff sued Defendant for breach of contract and breach of the implied covenant of good faith and fair dealing. (Dkt. No. 1.) Defendant moved to dismiss for either lack of personal jurisdiction or under the first-to-file rule, or, in the alternative, to transfer

United States District Court
Northern District of California

venue to the Northern District of Georgia. (Dkt. No. 21.) Defendant also moved to stay discovery deadlines while its motion was pending. (Dkt. No. 26.) The Court issued Plaintiff an order to show cause because it had not properly alleged subject matter jurisdiction, (Dkt. No. 30), and Plaintiff responded the Court had diversity jurisdiction because its sole member is a California citizen, and Defendant's sole member is a Georgia citizen, (Dkt. No. 32).

**DISCUSSION**

## I. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

To exercise personal jurisdiction over a nonresident defendant, a court must establish the defendant had at least "minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation marks and citations omitted). Personal jurisdiction can be either general or specific. General personal jurisdiction exists "when a defendant is essentially at home in the State." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quotation marks and citation omitted). And specific personal jurisdiction arises when a defendant takes "some act by which it purposefully avails itself of the privilege of conducting activities within the forum State." *Id.* at 359 (cleaned up).

The plaintiff "bears the burden" of establishing personal jurisdiction exists. *In re Boon Global Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019). Courts may consider declarations and other evidence outside the pleadings to determine whether it has personal jurisdiction. *See id.* Although "uncontroverted allegations in [a] plaintiff's complaint must be taken as true," courts "may not assume the truth of allegations in a pleading which are controverted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (cleaned up). However, any "factual disputes" must be "resolve[d] . . . in the plaintiff's favor." *Id.* (citation omitted).

### A. General Jurisdiction

The parties do not dispute Defendant is not subject to general jurisdiction in California. Defendant is a limited liability company whose sole owner and member, Dr. Elshihabi, is a Georgia citizen. (Dkt. No. 32 at 2.) *See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("[A]n LLC is a citizen of every state of which its owners/members

are citizens."). So, because Defendant is not "essentially at home" in California, it is not subject to general jurisdiction here. *See Ford Motor Co.*, 592 U.S. at 358.

**B. Specific Jurisdiction**

The Ninth Circuit "use[s] a three-prong test for analyzing claims of specific jurisdiction." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020). "First, the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Id.* (cleaned up). "Second, the claim must arise out of or relate to the defendant's forum-related activities." *Id.* (citation omitted). "Finally, the exercise of jurisdiction must be reasonable." *Id.* (citation omitted). "The plaintiff must satisfy the first two prongs of this test," at which point "the burden [] shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (cleaned up).

**1. Purposeful Availment & Purposeful Direction**

"[P]urposeful availment and purposeful direction are distinct concepts." *Id.* (citation omitted). "Purposeful availment generally provides a more useful frame of analysis for claims sounding in contract, while purposeful direction is often the better approach for analyzing claims in tort." *Id.* (citations omitted). That said, Ninth Circuit "cases do not impose a rigid dividing line between purposeful direction and purposeful availment, and the first prong of the personal jurisdiction test may be satisfied by purposeful availment, by purposeful direction, or by some combination thereof." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 751 n.10 (9th Cir. 2025) (cleaned up). Here, Plaintiff asserts contract claims, and the parties agree purposeful availment, rather than purposeful direction, applies.

"To establish purposeful availment, [courts] look at a defendant's 'entire course of dealing' with the forum state—'not solely the particular contract or tortious conduct giving rise to [a plaintiff's] claim.'" *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1163 (9th Cir. 2023) (quoting *Glob. Commodities*, 972 F.3d at 1108). Purposeful availment exists when "the defendant 'deliberately reached out beyond [its] home—by, for example, exploiting a market in the forum

United States District Court
Northern District of California

State or entering a contractual relationship centered there.'" *Id.* (quoting *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 503 (9th Cir. 2023)). But "a contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2004) (cleaned up). Instead, courts "consider 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing,'" to determine whether a defendant has acted to "'create a substantial connection with the forum State.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 479 (1985)).

**a. Prior Negotiations**

"[I]f the defendant directly solicits business in the forum state, the resulting transactions will probably constitute the deliberate transaction of business invoking the benefits of the forum state's laws." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986) (citations omitted). "Similarly, conducting contract negotiations in the forum state will probably qualify as an invocation of the forum law's benefits and protections." *Id.* (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1287-88 (9th Cir. 1977) (holding that the plaintiff's "claim of breach arises out of the contract which was at least partially negotiated in California and actually formed in California upon the execution of [the plaintiff's] acceptance . . . weigh[s] strongly in favor of jurisdiction")).

Plaintiff's managing director, Katharina Juenger, declares Dr. Elshihabi asked her "to fly to Orange County to meet with him and his advisor Michael Hunn . . . to negotiate the terms of the letter of intent" in May 2025. (Dkt. No. 35-1 ¶¶ 1, 6.) That Plaintiff and Defendant, on at least one occasion, negotiated the terms of their agreement in California probably supports Defendant's purposeful availment of California. *See Decker Coal*, 805 F.2d at 840 ("[C]onducting contract negotiations in the forum state will probably qualify as an invocation of the forum law's benefits and protections." (citation omitted)); *cf. McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 816 (9th Cir. 1988) (holding because the contract was negotiated in England, "the substance of the relationship was formed" in England and did not support personal jurisdiction in California). In addition, by asking Defendant, a California citizen, to negotiate terms of an LOI in California, Plaintiff solicited business in California. *See Decker Coal*, 805 F.2d at 840 ("[I]f the defendant

directly solicits business in the forum state, the resulting transactions will probably constitute the deliberate transaction of business invoking the benefits of the forum state's laws." (citations omitted)); *see also LocusPoint Networks, LLC v. D.T.V., LLC*, No. 3:14-CV-01278-JSC, 2014 WL 3836792, at *5 (N.D. Cal. Aug. 1, 2014) (holding the defendant's sales offer to the plaintiff, a California resident, constituted solicitation of business in California supporting purposeful availment).

In response, Defendant contends "Ms. Juenger asked [Dr. Elshihabi] for a meeting" while he was visiting family in California. (Dkt. No. 22 ¶ 7.) Dr. Elshihabi also declares "a letter of intent was not negotiated or agreed to" in that meeting, (Dkt. No. 41 ¶¶ 7-10), and instead, "the purpose of the meeting was so that Ms. Juenger could meet [him] in person again, and so that she could pitch [him] her thoughts and plans," (Dkt. No. 22 ¶ 7). But to the extent Dr. Elshihabi's declaration indicates Plaintiff, rather than Defendant, solicited business in California, the declaration creates a factual dispute with Ms. Juenger's declaration, which the Court resolves in Plaintiff's favor. *See Mavrix Photo, Inc.*, 647 F.3d at 1223 (explaining courts "resolve factual disputes in the plaintiff's favor" in reviewing challenges to personal jurisdiction). And even if the parties broadly discussed a business relationship, rather than negotiating particular terms of the LOI, that discussion in California, "while not dispositive, would still weigh in favor of a finding of purposeful availment." *See Creative Realty Partners, Inc. v. Michaelson Real Est. Grp., LLC*, No. 2:20-CV-03693-MWF (MRW), 2022 WL 16935330, at *8 (C.D. Cal. Sept. 13, 2022) (holding testimony a defendant "flew to Los Angeles two times to meet with the principals of [the plaintiff] to discuss their potential business relationship . . . while not dispositive, does weigh in favor of a finding of purposeful availment" (citation omitted)).

So, that Defendant met with Plaintiff in California to negotiate the LOI—or at least to discuss their future business relationship—weighs in favor of purposeful availment.

**b. Future Consequences**

"[P]arties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473 (quotation marks and

citations omitted). So, "[t]he purposeful availment prong is satisfied when a defendant takes deliberate actions within the forum state or creates continuing obligations to forum residents." *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986) (citing *Burger King*, 471 U.S. at 475-76).

Plaintiff alleges Defendant entered into an LOI which "contemplated that [Plaintiff] would make significant outlays of capital to bring the transaction to fruition, including but not limited to legal costs, diligence, and obtaining necessary investors." (Dkt. No. 1 ¶ 12.) According to Ms. Juenger, "Dr. Elshihabi knew that all the finance, AI, and operations work was going to be done and was already being done in San Francisco at [Plaintiff's] corporate offices." (Dkt. No. 35-1 ¶ 9.) Dr. Elshihabi also knew HCAP would provide funding as an investor, and HCAP was based in California and planned conduct work there. (*Id.* ¶ 12.) Given the work required to close the transaction, Defendant agreed it "would pay all costs and expenses incurred and closing fees" if Plaintiff "was substantially positioned to close" and Defendant "refused to close." (Dkt. No. 1 ¶ 13.) So, by agreeing to the LOI, Defendant "create[d] continuing obligations to forum residents," namely, to repay Plaintiff for work and costs expended in completing the transaction. *See Hirsch*, 800 F.2d at 1478; *see also LocusPoint Networks*, 2014 WL 3836792, at *6 (holding joint obligations in fulfilling contract "produced months of substantial coordination and joint effort" in which the non-resident defendant "committed itself to ongoing obligations, including cooperation, with a citizen of another state").

Furthermore, Ms. Juenger attests that, under the LOI, Plaintiff would "acquire one hundred percent of the equity of Legacy Brain & Spine in exchange for cash consideration and rollover equity of forty nine percent. It was important and agreed by both parties from the beginning that growing the company going forward would be in close collaboration between Legacy Brain & Spine and Cade Partners." (Dkt. No. 35-1 ¶ ) ) So, by entering into the LOI for Plaintiff to purchase Defendant, and Defendant to take a 49% rollover equity stake in Plaintiff, Defendant created the expectation of a years-long, "continuing relationship" with a California company. *See Burger King*, 471 U.S. at 473; *see also Vuori v. Grasshopper Cap. LLC*, No. 17-CV-06362-JCS, 2018 WL 1014633, at *14 (N.D. Cal. Feb. 22, 2018) (holding the defendants' "goal [] to forge a

multi-year relationship with Vuori, a California resident . . . supports a finding of purposeful availment").

Defendant's argument all future consequences would occur in Georgia because the parties agreed Plaintiff would purchase Defendant, a Georgia company, is unavailing. As an initial matter, Defendant's argument ignores the significant efforts Plaintiff agreed to expend in California pursuant to the LOI, including securing Defendant a California investor and operating Defendant's company from California. Furthermore, even if the LOI contemplated closing a transaction for Plaintiff owning a Georgia company, by agreeing to repay Plaintiff if it refused to close the transaction, Defendant agreed to potential future obligations to a California company.

So, by agreeing to a potential multi-year, continuing relationship with a California company or—if Defendant broke off that relationship—agreeing to repay that California company, Defendant agreed to future consequences which weigh in favor of purposeful availment.

**c. Terms**

"Terms that provide fair notice to a defendant that he may possibly be subject to suit in the forum state weigh in favor of a purposeful availment finding." *LocusPoint Networks*, 2014 WL 3836792, at *6 (citing *Burger King*, 471 U.S. at 463; *Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001), *abrogated on other grounds by Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017)).

The parties agree Delaware law, rather than California law, governs the LOI. (Dkt. No. 35-1 ¶ 9; *see also* Dkt. No. 22 ¶¶ 14-15.) *See Doe*, 248 F.3d at 924 (holding no purposeful availment of California because, among other things, "the law governing the contracts is the law of England, Bermuda, or Burma"); *cf. Burger King*, 471 U.S. at 480 (noting the "contract documents themselves emphasize that Burger King's operations are conducted and supervised from the Miami headquarters, that all relevant notices and payments must be sent there, and that the agreements were made in and enforced from Miami"). So, the LOI's terms weigh against finding Defendant's purposeful availment of California.

Although Defendant's communications to Plaintiff's California address weigh slightly in favor of purposeful availment, the LOI's governing law terms weigh against purposeful availment.

So, the terms weigh at most slightly against purposeful availment.

**d. Actual Course of Dealing**

"The fourth factor, 'actual course of dealing,' requires courts to assess the 'quality and nature' of the relationship." *Creative Realty Partners, Inc.*, 2022 WL 16935330, at *10. Courts therefore consider whether "[t]he 'quality and nature' of [the] [d]efendant's relationship with the company in California . . . 'can in no sense be viewed as random, fortuitous, or attenuated.'" *LocusPoint Networks, LLC*, 2014 WL 3836792, at *7 (quoting *Burger King*, 471 U.S. at 480)); *see also Burger King*, 471 U.S. at 475 (explaining purposeful availment requires "a substantial connection," rather than simply "random, fortuitous, or attenuated contacts" (cleaned up)).

Ms. Juenger declares Plaintiff's communications to Defendant "showed [Plaintiff's] California address," and "[m]ultiple phone calls and correspondence were sent by [Defendant] to [Plaintiff] at its San Francisco offices." (Dkt. No. 35-1 ¶ 12.) In *Longyu International Inc. v. E-Lot Electronics Recycling Inc.*, No. 2:13-CV-07086-CAS, 2014 WL 1682811 (C.D. Cal. Apr. 29, 2014), the court held the fact "the invoices submitted by [the defendant] to [the plaintiff] unambiguously reflect [the plaintiff's] California address," and the plaintiff "wired payment from California to" the defendant "slightly favors a finding o[f] purposeful availment because it placed the defendant "on reasonable notice that they could be expected to be called into court in California." *Id.* at *5 (quotation marks and citation omitted); *see also Sher v. Johnson*, 911 F.2d 1357, 1362-64 (9th Cir. 1990) (holding while a law firm's phone calls and mail into California were not alone a substantial connection to California, they weighed in favor of finding purposeful availment). Although Defendant argues *Longyu* does not apply because Plaintiff never wired money to Defendant from California and Plaintiff sometimes met with Defendant in Georgia, Defendant's communications with Plaintiff in California provided Defendant at least some notice "he may possibly be subject to suit in" California. *See LocusPoint Networks*, 2014 WL 3836792, at *6.

Moreover, by agreeing Plaintiff could purchase all its equity and then operate its business for several years, Defendant agreed to a substantial relationship with Plaintiff. Defendant argues its relationship with Plaintiff is not as significant as the relationships at issue in cases finding

purposeful availment. *See, e.g.*, *Burger King*, 471 U.S. at 480 (holding the defendant's entering into a "20-year relationship" with "exacting regulation of his business" by a Florida plaintiff constituted purposeful availment), *LocusPoint Networks*, 2014 WL 3836792, at *7 (holding the parties' work together "for nearly a year," including the plaintiff paying the Defendant, formed a substantial enough relationship for purposeful availment); *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11-CV-02460-LHK, 2011 WL 2607158, at *5 (N.D. Cal. July 1, 2011) (holding the defendant's "weekly and monthly reports" to a California plaintiff supported purposeful availment given the "business relationship . . . contemplated ongoing obligations to [the plaintiff], its employees, and its customers in California"). But given Defendant cites no case holding a relationship like the one between Plaintiff and Defendant is insufficiently substantial—or otherwise "random, fortuitous, or attenuated," *see Burger King*, 417 U.S. at 480 (cleaned up), Defendant's argument the above cases are distinguishable is unavailing.

Defendant also argues because it "neither executed nor performed the LOI in California," (Dkt. No. 21 at 6), all its contacts with California arise from Plaintiff's relationship to California, not its own. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum.").

But as the court explained when rejecting the defendant's similar argument in *LocusPoint Networks*, "the defendant in *Burger King* also did not do business in Florida and he had no continuing performance obligations there." *LocusPoint Networks*, 2014 WL 3836792, at *7 (citing *Burger King*, 471 U.S. at 479 (noting the defendant's only physical tie to Florida was his business partner's brief training course in Miami, which did not factor into the Court's decision)). Instead, under *Burger King,* "[w]hat matters is the 'quality and nature' of the defendant's relationship with the forum plaintiff." *Id.* (quoting *Burger King*, 471 U.S. at 479). And like in *LocusPoint Networks*, "while Defendant performed (or failed to perform its obligations outside of California, Defendant nonetheless owed continuing duties to Plaintiff in California, the 'quality and nature' of which constituted a 'substantial connection with the forum." *Id.* at *8 (quoting *Burger King*, 471 U.S. at 479)).

Defendant's reliance on *Ward v. Jump Trading, LLC*, No. 25-CV-03989-PHK, 2026 WL

145846 (N.D. Cal. Jan. 20, 2026), to argue otherwise is unavailing. There, the court found no purposeful availment when "the only alleged connection between [the defendants] and California is harm suffered by one identified resident," the plaintiff, is not persuasive. *Id.* at *11. But in reaching that conclusion, the court emphasized there were no allegations or evidence the defendants "had any direct contact or communications or transactions with" the plaintiff, had ever "interacted with" the plaintiff, or "were even aware that [the plaintiff] was located in California." *Id.* So, *Ward* is not applicable to this case, in which Plaintiff's claims arise from a direct relationship and agreement, and substantial communications, in the process of purchasing Defendant.

Finally, at oral argument Defendant raised *Walden v. Fiore*, 571 U.S. 277 (2014) for the first time as the best case weighing against a finding of purposeful availment.[2] In *Walden*, a Georgia police officer working at the Atlanta airport seized cash from a couple as they changed planes en route from San Juan, Puerto Rico to Las Vegas, Nevada. *Walden*, 571 U.S. at 279-280. The couple later sued the police officer in the United States District Court for the District of Nevada. *Id.* at 281. The Supreme Court found no personal jurisdiction because the officer "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." *Id.* at 289. The Court contrasted the officer with a defendant who "enter[s] a contractual relationship that 'envision[s] continuing and wide-reaching contacts' in the forum State." *Id.* at 285 (quoting *Burger King*, 471 U.S. at 479-480). Defendant's dealings with the Plaintiff resemble the latter much more than the former: Defendant travelled to California, repeatedly contacted the California-based Plaintiff over the course of negotiating the terms of the deal, and envisioned a continuing relationship with the California-based Plaintiff as they managed their new enterprise together. For these reasons, *Walden* is inapposite to the Defendant's contacts with the Plaintiff.

So, because Defendant's relationship with Plaintiff, a California company, was substantial

---

[2] In the Defendant's motion, *Walden* is only cited for the "arises out of or relates to" prong of the specific personal jurisdiction analysis and not the "purposeful availment" prong. (*See* Dkt. No. 21 at 7.)

rather than random, fortuitous, or attenuated, the actual course of dealing weighs in favor of purposeful availment.

Because Defendant's prior negotiations, future consequences, and actual course of dealing weigh in favor of purposeful availment, and the LOI's terms at most weigh slightly against purposeful availment, Plaintiff has shown Defendant purposefully availed itself of a California forum.

**2. Arises Out Of or Relates To**

The second prong of the specific jurisdiction test asks whether the claim "arises out of or relates to the defendant's forum-related activities." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Under the Ninth Circuit's "'but for' test, a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action." *Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888, 894 (9th Cir. 1996) (citation omitted). Here, Defendant's contacts with California include agreeing to a transaction with Plaintiff, a California company, pursuant to which either Plaintiff would own Defendant for several years or, if Defendant refused to close the transaction, Defendant would be obligated to repay Plaintiff's transaction costs and expenses. Plaintiff now sues Defendant because Defendant allegedly refused to close the transaction but has not fulfilled its agreed-upon obligation to repay Plaintiff's costs and expenses. So, there is a direct nexus between Defendant's contacts with California and Plaintiff's claims; but for Defendant's entering into the agreement with Plaintiff, Plaintiff would have no reason to sue. *See Ballard v. Savage,* 65 F.3d 1495, 1500 (9th Cir. 1995) (holding nexus existed because but for the defendant's bank business in the United States, a third party "would not have opened a[] [United States] account at the bank and filled it with [Plaintiff's] funds").

Plaintiff's claims therefore arise out of Defendant's California-related activities.

**3. Reasonableness**

As Plaintiff has satisfied the first two prongs, Defendant has "the burden of presenting a compelling case that the presence of some other considerations would render jurisdiction in [California] unreasonable." *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597,

607 (9th Cir. 2018) (cleaned up). The Ninth Circuit employs a multi-factor balancing test to determine the reasonableness of exercising personal jurisdiction over a non-resident defendant, assessing:

> 1) the extent of the defendant's purposeful interjection into the forum state's affairs;
> 2) the burden on the defendant;
> 3) conflicts of law between the forum and defendant's home jurisdiction;
> 4) the forum's interest in adjudicating the dispute;
> 5) the most efficient judicial resolution of the dispute;
> 6) the plaintiff's interest in convenient and effective relief; and
> 7) the existence of an alternative forum.

*Silk v. Bond*, 65 F.4th 445, 458 (9th Cir. 2023) (quoting *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991)). "No single factor is dispositive." *Id.* (citation omitted). Although Defendant only argues exercising jurisdiction is unreasonable because of the burden on Defendant, the Court addresses all seven factors.

Because the first factor "parallels the question of minimum contacts," it weighs in favor of exercising jurisdiction for the reasons discussed above. *See Amoco Egypt Oil Co. v. Leonis Nav. Co.*, 1 F.3d 848, 852 (9th Cir. 1993) (citation omitted).

As to the second factor, Defendant asserts "[t]here would be a substantial burden on [Defendant] to have to defend itself in California" given "[i]t is a single-member entity based and located in Georgia, all of its evidence is located in Georgia, and all of its witnesses are in Georgia." (Dkt. No. 21 at 7.) But courts "examine the burden on the defendant in light of the corresponding burden on the plaintiff," and litigating in Georgia might pose similar challenges to Plaintiff, a California company. *See Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988) (quotation marks and citation omitted). Furthermore, "modern advances in communications and transportation have significantly reduced the burden of litigating in another [forum]." *Id.* Ultimately, "although defending a lawsuit in California is surely burdensome to" Defendant, Defendant "has not presented evidence that the inconvenience is so great as to constitute a deprivation of due process, [] so this factor just barely weighs against the exercise of personal jurisdiction." *See Silk*, 65 F.4th at 458 (quotation marks and citation omitted).

The third factor considers conflicts of law between the forum and defendant's home

jurisdiction because "[t]he reasonableness of jurisdiction depends [] in part upon the seriousness of the potential affront to the sovereignty of the defendants' state." *Gates v. Learjet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir. 1984). But the LOI states Delaware law—not Georgia law—governs the contract. So, this factor is at best neutral.

As to the fourth factor, "California has a strong interest in providing its residents a convenient forum for redressing injuries caused by out-of-state defendants." *Cisco Sys. Inc v. STMicroelectronics Inc*, No. 5:14-CV-03236-RMW, 2015 WL 5138556, at *5 (N.D. Cal. Sept. 1, 2015) (citing *Burger King*, 471 U.S. at 473 ("[A] State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." (citation omitted)). So, the fourth factor weighs in favor of exercising jurisdiction.

Although the fifth factor, efficient judicial resolution of the dispute "focuses on the location of the evidence and witnesses, . . . it is no longer weighed heavily given the modern advances in communication and transportation." *Silk*, 65 F.4th at 459 (quotation marks and citation omitted). So, the fifth factor is neutral.

The sixth factor, convenience to Plaintiff, weighs in favor of exercising jurisdiction given it would "be more convenient for plaintiff to litigate in the same state as where its office is based." *LocusPoint Networks*, 2014 WL 3836792, at *9. However, because "in this circuit, the plaintiff's convenience is not of paramount importance," *Dole Food Co. v. Watts*, 303 F.3d 1104, 1116 (9th Cir. 2002), this factor does not weigh heavily in favor of exercising jurisdiction.

The seventh factor is the existence of alternate fora. Plaintiff does not show that it could not sue Defendant in Georgia. *See Harris Rutzky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1112, 1133-34 (9th Cir. 2003) ("The plaintiff bears the burden of proving the unavailability of an alternative forum.") So, this factor weighs against exercising jurisdiction.

***

On balance, Defendant "has not met its burden of presenting a compelling case that the exercise of jurisdiction would not comport with fair play and substantial justice." *See Harris Rutsky*, 328 F.3d at 1134; *see also Roth*, 942 F.2d at 625 (finding exercise of jurisdiction was reasonable even though only two reasonableness factors favored plaintiff, while three favored

defendant). Defendant entered into a significant relationship with a California company, pursuant to which it agreed either the California company would own and operate it for several years or—if Defendant refused to close the transaction—Defendant would repay the California company's costs. On these facts, Defendant would have to establish the balance of the seven factors weighs heavily against exercising jurisdiction to make the requisite "compelling case." *See Roth*, 942 F.2d at 625. It has not.

So, the Court DENIES Defendant's motion to dismiss for lack of personal jurisdiction.

## II. MOTION TO DISMISS UNDER FIRST-TO-FILE RULE

The first-to-file rule is a "generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *See Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982). Under the rule, a district court "has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy." *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997) (citations omitted).

However, "[t]here are several recognized exceptions to the first-to-file rule: bad faith, anticipatory suits, and forum shopping." *Young v. Trump*, 506 F. Supp. 3d 921, 933 (N.D. Cal. 2020) (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991)). "Anticipatory suits are found when the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent, and are viewed with disfavor as examples of forum shopping and gamesmanship." *Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp. 2d 1188, 1192 (C.D. Cal. 2006) (quotation marks and citation omitted).

Given Defendant's earlier-filed suit in the Northern District of Georgia, Defendant asks the Court to apply the first-to-file rule and dismiss this case. But Defendant also acknowledges its Georgia suit was filed in anticipation of this case. (Dkt. No. 21 at 8.) And Plaintiff's counsel declares she sent a settlement offer and draft complaint to Defendant's counsel on May 20, 2026, and Defendant the next day filed a declaratory judgment action in the Northern District of Georgia. (Dkt. No. 35-2 ¶¶ 3, 4.) So, applying "the first-to-file doctrine in this instance would unreasonably penalize [Plaintiff], which attempted to resolve the dispute before filing suit." *See*

United States District Court
Northern District of California

*Xoxide, Inc.*, 448 F. Supp. 2d at 1194 (cleaned up); *see also id.* at 1193 ("[W]here . . . a declaratory judgment action has been triggered by a cease and desist letter that both seeks settlement and notifies the party of the possibility of litigation upon collapse of negotiations, equity militates in favor of allowing the second-filed action to proceed to judgment rather than the first." (quotation marks and citation omitted)).

The Court therefore denies Defendant's motion to dismiss this case under the first-to-file rule.

## III. ALTERNATIVE MOTION TO TRANSFER

28 U.S.C. § 1404(a) provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "[T]he movant must first show that the transferee court is one in which the original action could have been brought." *See Rodriguez v. Thoratec Corp.*, No. 26-CV-01653-JSC, 2026 WL 1076833, at *2 (N.D. Cal. Apr. 20, 2026) (quotation marks and citation omitted); *see also id.* ("An action might have been brought in a court that: (1) is able to exercise personal jurisdiction over the defendants, (2) has subject matter jurisdiction over the claim, and (3) would be a proper venue." (cleaned up)). Courts then conduct an "individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (describing several factors). Ultimately, "[t]he burden is on the moving party to show transfer of venue is appropriate." *See Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

In the alternative to dismissal, Defendant asks the Court to transfer this action to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a). But Defendant only argues: "the proposed transaction was intended to be effective in Georgia, where [Defendant] is wholly located"; "the parties' respective contacts lie with Georgia where [Plaintiff] traveled frequently while [Defendant] never traveled to California for the LOI"; and "[o]verall, Georgia is simply a more appropriate forum than California for the reasons already discussed above." (Dkt. No. 21 at 9.) Defendant's assertions do not meet its burden of showing transfer of venue is appropriate under section 1404(a). So, the Court denies the motion to transfer.

United States District Court
Northern District of California

**CONCLUSION**

For the reasons stated above, the Court DENIES Defendant's motion to dismiss for lack of personal jurisdiction or pursuant to the first-to-file rule, and DENIES Defendant's alternative motion to transfer. As the Court has denied the motion to dismiss for lack of personal jurisdiction, the Court also DENIES as moot the motion to stay discovery deadlines pending determination.

The Court sets an initial case management conference for **September 23, 2026 at 2:00 p.m.** via Zoom video. A joint case management statement is due one week in advance.

This Order disposes of Docket Nos. 21 and 26.

**IT IS SO ORDERED.**

Dated: August 20, 2026

JACQUELINE SCOTT CORLEY
United States District Judge